Belknap
No. 85-472

RONALD DiPERRI & a.

v.

DAVID N. TOTHILL & a.

RONALD DiPERRI & a.

v.

WILLIAM R. TOTHILL

August 19, 1987

*Charles A. Russell*, of Concord, by briefs and orally, for the plaintiffs.

*Shaines & McEachern*, of Portsmouth (*Paul McEachern* and *Matthew T. Brock* on the briefs, and *Mr. Brock* orally), for the defendants.

BROCK, C.J. This is an appeal from a decision of the Superior Court (*Wyman*, J.) in a negligent misrepresentation and breach of contract case. We reverse.

In April 1980, the plaintiffs, Ronald and Marie DiPerri, as buyers, entered into a purchase and sale agreement with the defendants, Dorothy and David Tothill, for the sale of the real estate, equipment and inventory of Mountain's General Store, in Center Barnstead. The ultimate purchase price was $92,677.72. The Bank of New Hampshire (Bank) held a note secured by a mortgage from the Tothills on the property. The defendants represented to the plaintiffs that the 1976 note was for a fixed term with a fixed interest rate of ten percent. The plaintiffs' purchase of the property was financed through a wrap-around mortgage under which the plaintiffs did not assume the defendants' obligation to the Bank, but, rather, paid the mortgage payments directly to the defendants, who remained liable on the original note. At no time did the plaintiffs or their counsel contact the Bank directly to learn the exact contents of the underlying documents. Further, the defendants did not disclose an agreement to renegotiate the interest rate on the 1976 note after five years, or that the note was in fact a demand note, although they had represented it to be for a fixed term.

After the consummation of the sale, the Bank, through its counsel, notified the plaintiffs' counsel that it held two mortgages on the real estate and a security interest in accounts receivable, inventory, and store fixtures. Paragraph seven of the security agreement regarding store fixtures provided that "DEBTOR will not sell or offer to sell or otherwise transfer the Collateral or any interest therein without the written consent of BANK[.]" Relying on this paragraph, the Bank stated that it did not consent to the sale. Stating that it had the right to accelerate the debt, the Bank posed two alternatives to the DiPerris to allow them to avoid foreclosure: (1) refinance the debt to the Bank at an interest rate not less than three percent above the Bank's prime rate; or (2) get

financing with another institution in order to pay off the debt owed to the Bank. The DiPerris initially chose the first option, which resulted in a significantly higher interest rate. The defendants agreed to discharge the underlying mortgage. The plaintiffs brought these suits in March 1981, and in May 1981 refinanced the debt with another bank. At no time, however, did the monthly payment by the DiPerris drop below the monthly payment figure under the original agreement.

The DiPerris brought two suits in the superior court stating identical causes of action, one against Dorothy Tothill and her son David, and the other against William R. Tothill, her husband, who had acted as agent for the Tothills in making the sale. The two claims presented by the writs were for negligent misrepresentation and unjust enrichment.

After a two-day bench trial, the trial court found

> "from the evidence by a balance of probabilities that defendants' agreement with plaintiffs was that if plaintiffs purchased·their store and inventory at a designated price that plaintiffs would not have to pay more than 10 percent per annum on the mortgage balance for 16 and a half years, and that, whatever the subsequent turn of events, plaintiffs, shortly after the sale, were required to pay substantially in excess of 10 percent for the last five years and until May, 1987. The Court finds that the defendants executed an undisclosed independent renegotiation of interest rate agreement with the mortgagee bank."

The court found that the defendants negligently misrepresented the fixed-interest-rate nature of their note and mortgage to the Bank of New Hampshire, but did not find fraud.

The court noted that the property was more valuable at the time of the decree than at the time of sale, but stated that this had no effect on the defendants' liability. The court rendered a verdict for the plaintiffs in the amount of $13,810, apparently arriving at that figure by taking the difference between the payments under the original note and the increased payments required of the plaintiffs after the Bank discovered the sale and demanded refinancing, decreased by taking into account the fact that the interest payments were tax deductible. The defendants' motion to set aside the verdict was denied by order dated October 4, 1985.

The defendants appeal on five separate grounds: (1) that the trial court applied an incorrect standard of proof in rendering its decision; (2) that all representations made by the defendants to the

plaintiffs were true; (3) that there was no reasonable reliance by the plaintiffs on any representations made by the defendants; (4) that the plaintiffs did not suffer any cognizable damage arising out of the defendants' representations; and (5) that unilateral renegotiation of the mortgage by the plaintiffs bars them from obtaining damages from the defendants based on this renegotiation agreement.

■ The defendants first argue that the trial court applied the wrong standard of proof of negligent misrepresentation, claiming that misrepresentation must be proved by clear and convincing evidence. Therefore, the defendants argue, the trial judge's use of a balance of probabilities test was error. Reference simply to the case cited by the defendants is sufficient to show the error of their position. *Studwell v. The Travelers Insurance Co.*, 121 N.H. 1090, 438 A.2d 942 (1981), was a fraud, deceit, and misrepresentation case. In the course of its opinion, this court stated that "[t]o prevail in an action for misrepresentation, fraud or deceit, the plaintiffs must prove 'that there was a misrepresentation of fact.' *Munson v. Raudonis*, 118 N.H. 474, 477, 387 A.2d 1174, 1176 (1978). The plaintiffs have the burden of proving *fraud* 'by clear and convincing proof.' *Wilko of Nashua, Inc. v. Tap Realty, Inc.*, 117 N.H. 843, 849, 379 A.2d 798, 802 (1977) (citations omitted). 'Fraud cannot be implied by doubtful circumstances.' *Id.* at 849, 379 A.2d at 802." 121 N.H. at 1091, 438 A.2d at 943 (emphasis added). Thus, the defendants' own case authority does not support them, as the plaintiffs have not alleged fraud. We therefore reject the defendants' first argument.

■■ We find the defendants' fourth argument, relating to causation, dispositive, and therefore need not address the other issues raised. The basis of the plaintiffs' complaint was that

> "the representations made by the Defendants to the Plaintiffs that the promissory note was for the principal sum of Sixty-Five Thousand Dollars ($65,000) at an interest rate of ten (10) percent per annum for a term of twenty (20) years was incorrect and false; said promissory note was in fact, by its stated terms, a demand note payable upon the demand of the Bank of New Hampshire; further, the Defendants had agreed with said Bank that the promissory note would be subject to renegotiation within five (5) years of its original execution date; and the Defendants knew, or should have known, that their representations to the Plaintiffs were

incorrect and false and that the Plaintiffs would rely thereon[.]"

The complaint further alleged that these representations resulted in damage to the plaintiffs because the Bank called in the note, resulting in increased monthly payments and loss of business profits. Apparently relying on the renegotiation agreement, the court found for the plaintiffs in the amount of $13,810, and further denied the defendants' motion to set aside the verdict. On appeal, the defendants

"can prevail only if we can say there was no evidence to support the Court's finding or it involved a plain mistake. Since the Trial Court had the advantage of seeing and hearing the witnesses on the stand, we do not set aside the verdict merely because on the cold record we might draw different inferences on questions of fact."

*Powell v. Gagne*, 102 N.H. 256, 257, 154 A.2d 750, 751 (1959) (citations omitted). Therefore, the question for decision is whether there was evidence to support a causal connection between the misrepresentations claimed and the harm allegedly resulting. After a careful review of the record, we hold that there was not. No evidence was adduced at trial to show a connection between the misrepresentations relied upon to establish damages and the actual damage suffered. It was the existence of the collateral security agreement which allowed the Bank to threaten to accelerate the debt. The undisclosed interest renegotiation agreement, even assuming that it became part of the completed contract, had nothing to do with the Bank's action, nor did the character of the note as a demand note. The conditions contained in the note would have been the same whether or not the note was a demand note or one for a fixed term. Therefore, there was no causal connection between the asserted misrepresentations and the harm which ultimately occurred.

The reliance by the plaintiffs on a clause in the purchase and sale agreement regarding a steady interest rate is misplaced, inasmuch as that guarantee was contained in a description of one of two possible forms of financing. Ultimately, the parties settled on a different form of financing, and the plaintiffs have presented us with no authority which would justify the transformation of this descriptive clause into a generally operative and enforceable guarantee. Because the existence of the collateral security agreement was the cause of the plaintiffs' harm, but was not relied upon by them in their pleadings, we hold that the trial court erred

in awarding damages on the basis that it did, and we therefore reverse.

*Reversed.*

All concurred.