Merrimack
No. 90-417

ISLAND SHORES ESTATES CONDOMINIUM ASSOCIATION

v.

CITY OF CONCORD

November 4, 1992

*Hibbard & Spinella, P.A.*, of Concord (*Frank P. Spinella, Jr.* on the brief and orally), for the plaintiff.

*Cleveland, Waters and Bass, P.A.*, of Concord (*Thomas F. Kehr* and *Craig L. Staples* on the brief, and *Mr. Kehr* orally), for the defendant.

HORTON, J. This appeal results from an order of the Superior Court (*Morrill*, J.), dismissing the plaintiff's tort action, and asks whether a cause of action exists against a municipality for negligent performance of a building inspection. We find that the injuries alleged by the plaintiff are not of the type against which the City of Concord had a duty to protect and, therefore, affirm.

The plaintiff, Island Shores Estates Condominium Association (Association), is an association of owners of 269 condominium units constructed in 1985 and 1986 in Penacook. The Concord Code Enforcement Department inspected these units and issued certificates of occupancy in 1986 and 1987. The developer of these units is now bankrupt, and the unit owners filed this action against the City of Concord (city) alleging that the inspection did not meet the 1981 Building Official's and Code Administrator's International Building Code requirements. The plaintiff alleges that its units now suffer from a litany of flaws, including inadequate structural framing of exterior decks, inadequate fire walls construction, inadequate installation of the heating systems, inadequate roof ventilation, inadequate site drainage, inadequate insulation of plumbing lines, and improper structural soundness. According to the plaintiff's writ, the failure to detect these problems constitutes gross negligence and "the construction approved by defendant threatens the structural integrity of the units and the health and safety of its occupants; that resultant harm to the owners of the units has occurred." The city argues that it owed the plaintiff no actionable duty under the public duty rule, as set out in *Hartman v. Town of Hooksett*, 125 N.H. 34, 480 A.2d 12 (1984).

Because this case arises from a motion to dismiss, we take as true the facts alleged and decide whether they constitute a basis for legal relief. *City of Berlin v. State*, 124 N.H. 627, 630, 474 A.2d 1025, 1027 (1984). This court, in reviewing the trial court's order of dis-

missal, must determine whether the plaintiff's writ contains facts that are sufficient to constitute a cause of action. *Jay Edwards, Inc. v. Baker*, 130 N.H. 41, 44, 534 A.2d 706, 708 (1987). This determination requires the court to assume the truth of the plaintiff's well pleaded allegations of fact and to construe all reasonable inferences from them most favorably to the plaintiff. *Collectramatic, Inc. v. Kentucky Fried Chicken Corp.*, 127 N.H. 318, 320, 499 A.2d 999, 1000 (1985).

The plaintiff's writ contains five counts. The first count alleges that the defendant's inspection of the plaintiff's condominium units was negligently performed. All remaining counts incorporate the allegations of the first count by reference. Reduced to its essence, the writ states two theories under which the defendant had a duty to protect the plaintiff from injury. The first theory alleges a common law duty, and the second is based on the dictates of the Concord building ordinance.

In arguing the issue of duty, both parties have focused on the public duty rule. As developed, the public duty rule represents a limitation on liability for municipal acts that are carried out for the general welfare. In cases where by statute or ordinance a public official has a general duty to perform a function for the public's benefit, it has been held that liability will not be imposed for the negligent performance of this duty, unless the plaintiff can establish an individual duty owed him. *See Miller v. State*, 62 N.Y.2d 506, 510, 467 N.E.2d 493, 495, 478 N.Y.S.2d 829, 831 (1984); *Campbell v. State*, 259 Ind. 55, 63, 284 N.E.2d 733, 737 (1972). In *Hartman v. Town of Hooksett*, we held that the Hooksett police were conservators of the peace and, as such, assumed no duty to the general public or plaintiff to warn travelers about defects in a State highway. *Hartman*, 125 N.H. at 37, 480 A.2d at 14. In the absence of a special relationship between the municipality and the plaintiff, resulting in the creation of a duty to use due care for the benefit of particular persons or classes of persons, no actionable duty would flow to the plaintiff. *Id.* We did state that such liability may be appropriate when the defendant voluntarily undertakes a specific duty for a special class of persons, inducing justifiable reliance on that service. *Id.* at 36–37, 480 A.2d at 13.

The plaintiff asks that we reject the public duty rule under the alternative grounds that: (1) the public duty rule no longer applies to claims of gross negligence or recklessness after our decision in *City of Dover v. Imperial Cas. & Indemn. Co.*, 133 N.H. 109, 575 A.2d 1280 (1990); (2) the public duty rule was waived pursuant to RSA

412:3 by virtue of the city's participation in the New Hampshire Municipal Association Property Liability Insurance Trust's pooled risk management program; or (3) this case is an exception to the public duty rule in that the city voluntarily undertook the duty to inspect new construction. The defendant contends that no cause of action exists by virtue of the public duty doctrine. The public duty debate is an interesting one, but a duty must exist before we reach the question of whether it is a public duty or a private duty. We do not reach any issues involving the public duty rule because we find the defendant had no duty to protect the plaintiff.

■■ The concept of duty is a legal one, and asks "'whether the plaintiff's interests are entitled to legal protection against the defendant's conduct.'" *Libbey v. Hampton Water Works Co., Inc.*, 118 N.H. 500, 502, 389 A.2d 434, 435 (1978) (quoting W. PROSSER, HANDBOOK OF THE LAW OF TORTS § 53, at 325 (4th ed. 1971)). The concepts of duty and legal causation are closely related and must be considered together. *See* W. KEETON, PROSSER AND KEETON ON THE LAW OF TORTS § 42, at 274 (5th ed. 1984); *McLaughlin v. Sullivan*, 123 N.H. 335, 341–42, 461 A.2d 123, 127 (1983). As Professors Prosser and Keeton point out:

> "It is quite possible to state every question which arises in connection with [legal causation as]: was the defendant under a duty to protect the plaintiff against the event which did in fact occur? . . . The question whether there is a duty has most often seemed helpful in cases where the only issue is in reality whether the defendant stands in any such relation to the plaintiff as to create any legally recognized obligation of conduct for the plaintiff's benefit. Or, reverting again to the starting point, whether the interests of the plaintiff are entitled to legal protection at the defendant's hands against the invasion which has in fact occurred."

W. KEETON, *supra* § 42, at 274. The term "duty" serves to focus attention on the policy issues determining the scope of the relationship between the parties, while legal causation focuses on the mechanical sequence of events that comprises causation in fact. It should be kept in mind, however, that a discussion of the concepts of duty and legal causation is often rooted in the same question. *Id.* The resolution of the question of either duty or legal causality ultimately depends upon a consideration of the competing policy reasons for and against the recognition of a duty. *Id.* We start with the plaintiff's

common law theory of duty, examining count one of the writ. Preliminarily we note that the plaintiff's allegations of injury lack specificity. We cannot tell if the injuries are physical, financial, or otherwise. Further the plaintiff failed to show the causal connection between the defendant's alleged failure to detect the inadequate workmanship of a third party and the plaintiff's injury.

If the pleadings are construed very liberally we can infer that the plaintiff's injury is financial. As best we can determine from the pleadings, the injury was caused by the poor structural integrity of the units. However, the poor structural integrity was not caused by the inspection, but by the construction itself, and the threat of the substandard construction would exist in spite of the inspection. To support a causal link between the city's actions and any damages suffered, the plaintiff needs to allege some additional act tying the city's inspection to the damages. *See DiPerri v. Tothill*, 129 N.H. 676, 680, 531 A.2d 342, 345 (1987). The plaintiff failed to plead facts demonstrating a legal causation between the city's approval of the construction and any injuries the plaintiff might allege. Rather, the plaintiff made bare legal conclusions that causation existed. It is well settled that a court "need not accept statements in the complaint which are merely conclusions of law." *Jay Edwards, Inc. v. Baker*, 130 N.H. 41, 45, 534 A.2d 706, 708 (1987) (citations omitted). The plaintiff failed to make a prima facie case.

On appeal, the plaintiff supplied the missing causal element. The plaintiff claimed the legal causation between the city's alleged negligent approval of the construction and the plaintiff's injury was the plaintiff's justifiable reliance upon the city's certificate of occupancy. Assuming, *arguendo*, the trial judge could infer the missing element, and further, had inferred the existence of injuries, then the plaintiff's writ would still have failed to state a cause of action because the defendant owed no duty, general or special, to the plaintiff. We believe the plaintiff attempted to plead a case of negligent misrepresentation. It desired to show that the city negligently determined that its condominiums were in conformance with the building code and that its members justifiably relied upon the city's determination and suffered financial injury as a result. A negligent misrepresentation, such as that alleged by the plaintiffs, is actionable when the representor fails to use reasonable care in ascertaining the facts. *See Maxwell Ice Co. v. Brackett, Shaw & Lunt Co.*, 80 N.H. 236, 239, 116 A. 34, 36 (1921) (agent of seller failed to properly

ascertain nature of buyer's engine use). Not all misrepresentations are actionable. A relationship must exist between the representor and the person relying on the misrepresentation that creates a duty. Absent contractual privity, such as that in *Maxwell*, a duty may flow to any foreseeable and intended third party beneficiaries of the contractual duty. *See Morvay v. Hanover Ins. Cos.*, 127 N.H. 723, 726, 506 A.2d 333, 335 (1986). *Morvay* is illustrative of the correlative nature of the concepts of duty and causality. In *Morvay* an insurance company relied on a fire investigator's report in determining whether the plaintiffs in that case were to be reimbursed for a fire on their premises. Although there was no contractual privity between the investigator and the plaintiffs, the plaintiffs were in the position of third party beneficiaries to that contract, and it was clearly foreseeable that the investigator's actions would affect the contractual relationship between the insurer and the insured.

In the instant case, where there is no direct relationship such as we found in *Morvay*, we see no duty the defendant owed the plaintiff, special or otherwise, that would sustain a claim for misrepresentation and make the plaintiff's financial reliance justifiable. The representation was not made to induce the plaintiff to vary its conduct, nor is it alleged that there was any knowledge that it would have such effect. This is not a case of intentional misrepresentation, and there are no other factors to indicate that the protection should be broader because the plaintiff's financial reliance upon the representation might be foreseeable to the city. *Cf. Spherex, Inc. v. Alexander Grant & Co.*, 122 N.H. 898, 902, 451 A.2d 1308, 1310–11 (1982) (liability attaches for intentional misrepresentation).

We note the countervailing interests in limiting the duty of the city. The defendant asserts the danger of making the city the insurer of every building project if the issuance of a certificate of occupancy is deemed a representation upon which the world can rely. The recognition of the dangers of such unlimited liability is not a vestige of municipal immunity, but is a consideration that must be a factor in every negligence analysis. *See McLaughlin*, 123 N.H. at 341–42, 461 A.2d at 127; *Spherex*, 122 N.H. at 904, 451 A.2d at 1312.

The city is not engaged in the trade of inspecting buildings to help buyers determine the commercial feasibility of building ownership. Had the plaintiff wished to assure itself of the commercial feasibility of the construction, the duty was the plaintiff's, and could have been met by utilizing its own resources or by hiring private contractors.

By using different standards and focusing on different aspects, the private contractor may well have presented information that caused the plaintiff's members to come to different conclusions as to the financial wisdom of purchasing their units. Such private business considerations are unrelated to the purpose of the municipality's inspection, which must remain focused on setting and enforcing sufficient standards to ensure the safety of structures.

■■ The plaintiff's second theory of duty is that the defendant had a statutorily imposed duty to the plaintiff. We sustain the dismissal of this theory, introduced in the second count, by applying our decision in *Weldy v. Town of Kingston*, 128 N.H. 325, 514 A.2d 1257 (1986). The breach of a statutory duty results in liability only when the plaintiff is in a class the statute is designed to protect and the injury is of the type that the statute is intended to prevent. *Id.* at 331–32, 514 A.2d at 1261. It is apparent from the language of the Concord Building Code § 100.4 (intent of Code "is to insure public safety, health and welfare insofar as they are affected by building construction"), and from commentators that "[t]he primary purpose of such codes and ordinances is . . . to protect the health and secure the safety of occupants of buildings, and not to protect the personal or property interests of individuals." 7A E. MCQUILLIN, MUNICIPAL CORPORATIONS § 24.507, at 99 (3d ed. 1989). No allegation of personal injury is made by the plaintiff.

■ The representation contained in the issuance of a certificate of occupancy, that the building meets the city's construction guidelines, might permit reasonable reliance for the physical well-being of the occupiers and visitors of the structure. *See Adams v. State*, 555 P.2d 235, 241 (Alaska 1976) (failure to discover and order correction of fire hazards caused injury when persons not warned were actually injured; subsequently abrogated by Alaska stat. 09.65.070(d)(1) (Supp. 1991)). We need not resolve whether recovery can be had for a physical injury sustained on the premises in reliance on the inspection, because the plaintiff does not, and cannot, assert such injury. Its pleading, as construed above, asserts a financial injury as a result of ownership of poorly constructed units. However, because the duty to inspect was not created for, nor intended to benefit, the financial interest of the land owners, we hold that the city owed no duty to the plaintiff to avoid negligent misrepresentation in its building inspection program when financial loss is alleged from the ownership of the property, and further hold that a party's financial reliance upon such

a representation made in the course of a public building inspection program is unjustified.

The remaining counts of the plaintiff's writ introduce no other theories of duty. We find the plaintiff's constitutional claims without merit. Absent sustainable allegations of a duty and damages proximately caused thereby, there can be no cause of action in negligence, and no need to determine whether the public duty doctrine is applicable. The superior court correctly dismissed the plaintiff's writ for failing to state a cause of action.

*Affirmed.*

BROCK, C.J., concurred specially; the others concurred.

BROCK, C.J., concurring specially: I concur in the result reached by the majority, but do so for different reasons. I believe that the public duty rule as announced in *Hartman v. Town of Hooksett*, 125 N.H. 34, 480 A.2d 12 (1984), is applicable to this case. However, relief is unavailable to the plaintiff association under this rule because plaintiff failed to show that it had a "special relationship" with the city, which would have created a special duty that was more than that owed to the general public. In *Town of Hooksett*, we held that in order "[t]o sustain liability against a municipality or its servants, the duty breached must be more than a duty owing to the general public. There must exist a special relationship between the municipality and the plaintiff, resulting in the creation of a duty to use due care for the benefit of particular persons or classes of persons." *Id.* at 36, 480 A.2d at 13 (citation omitted).

To determine whether a special relationship exists between the city and the plaintiff giving rise to liability of the city, it is necessary to determine the duties of the code enforcement department, the scope of those duties, and if any unique relationship existed between the parties. Under Section 30-2-4(c) of the Concord Code of Ordinances (Concord Code), the department has a duty to "(1) [s]upervise the issuance of ... building ... permits. ... [and] (2) [i]nspect ... new construction ... for conformity with the building, plumbing and zoning codes." The Concord Code must be read in conjunction with the BOCA Building Code/1981 to give it its full meaning. *See* Concord Code, Building Code, Sect. 26-1-1. BOCA 100.4 states that "[t]his code shall be construed to secure its expressed intent, which is to insure public safety, health and welfare insofar as they are affected by building construction . . . ."

It is clear under these provisions that the city owed a duty to the general public to insure that the buildings were constructed in a safe manner. This is in accordance with the traditional rule of law that the purpose of a building code is for the protection of the general public, not to protect individual property interests.

> "The primary purpose of such codes and ordinances is to secure to the municipality as a whole the benefits of a well-ordered municipal government, or, as sometimes expressed, to protect the health and secure the safety of occupants of buildings, and *not to protect the personal or property interests of individuals.*"

7A E. MCQUILLIN, MUNICIPAL CORPORATIONS § 24.507, at 99 (3d ed. 1989) (emphasis added); *see Dinsky v. Framingham*, 386 Mass. 801, 438 N.E.2d 51 (1982).

In this case, the building code was intended as a measure to benefit the general welfare, not to protect the individual property interests of the plaintiff. The plaintiff pleaded no facts to show that the requisite special relationship existed between the plaintiff and the city or that its injury was of the type intended to be protected under the code. For this reason, I believe that the defendant city is immune from liability under the public duty rule and, likewise, that the plaintiff association is not afforded protection under the "special relationship" exception to the rule.