Rockingham
No. 93-237

### JOSEPH HICKINGBOTHAM

v.

### BONNIE BURKE AND MARK VEMULLAN

July 24, 1995

*Boutin & Solomon, P.A.*, of Londonderry (*Peter M. Solomon* and *Thomas J. Corcoran* on the brief, and *Mr. Solomon* orally), for the plaintiff.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Richard E. Mills* and *Richard W. Head* on the brief, and *Mr. Mills* orally), for defendant Bonnie Burke.

*Mark Vemullan, pro se,* filed no brief.

BROCK, C.J. The plaintiff, Joseph Hickingbotham, sued the defendants, Bonnie Burke and Mark Vemullan, alleging that they, as social hosts, were liable for injuries he suffered after they served him alcohol at a party held at their home. Hickingbotham appeals from the Superior Court's (*Lynn*, J.) grant of defendant Burke's motion to dismiss the plaintiff's claim for failure to state a cause of action. Vemullan is in default. We affirm in part, reverse in part and remand.

In October 1990, Burke and Vemullan hosted a Halloween party at their residence in Windham. Hickingbotham's writ alleges that the defendants offered him intoxicating beverages during the party, including beer from a keg, and continued to provide him with alcohol throughout the evening, even though they knew or should have known that he was under the age of twenty-one and becoming increasingly intoxicated. The writ further alleges that after he became intoxicated, Hickingbotham left the party in a motor vehicle and was involved in an accident. He asserts that he is entitled to damages based on the defendants' violation of a statutory duty of care imposed by RSA 179:5 (1994). He also contends that he is entitled to damages because the defendants owed a common law duty of care to monitor prudently his consumption of alcohol and their failure to meet that duty directly, foreseeably, and proximately caused his motor vehicle accident.

When we review the superior court's decision on a motion to dismiss, our standard of review is "whether the [plaintiff's] allegations . . . are reasonably susceptible of a construction that would

permit recovery." *Thompson v. Forest,* 136 N.H. 215, 216, 614 A.2d 1064, 1065 (1992) (quotation omitted). We "assume the truth of the plaintiff's well pleaded allegations of fact and . . . construe all reasonable inferences from them most favorably to the plaintiff." *Island Shores Estates Condo. Assoc. v. City of Concord,* 136 N.H. 300, 303, 615 A.2d 629, 631 (1992).

*I. Statutory Cause of Action under RSA 179:5*

Hickingbotham argues that RSA 179:5 imposes a statutory duty on the defendants for the breach of which they may be held liable to respond in damages. RSA 179:5 states that "[n]o licensee, sales person, *nor any other person,* shall sell or give away or cause or allow or procure to be sold, delivered or given away any liquor or beverage *to a person under the age of 21 or to a person under the influence of liquor or beverage.*" (Emphasis added.) This section prohibits the conduct that Hickingbotham alleges. *See State v. Small,* 99 N.H. 349, 351, 111 A.2d 201, 202-03 (1955) (construing RL 170:39, the precursor to RSA 179:5).

█ Nothing in RSA chapter 179 or in New Hampshire's comprehensive statutory framework for controlling the production and distribution of intoxicating liquors authorizes this type of claim, however. The only penalties imposed by RSA chapter 179 are the suspension of liquor licenses, forfeiture, administrative fines, and criminal penalties. *See, e.g.,* RSA 179:57 (Supp. 1994) (authorizing suspension or revocation of license, administrative fines for violation of RSA chapter 179); RSA 179:58, I (1994) (providing criminal penalty for violation of RSA 179:5).

█ In *Ramsey v. Anctil,* 106 N.H. 375, 376, 211 A.2d 900, 901 (1965), we allowed an injured patron to proceed with a common law negligence action for injuries received as a result of being served additional liquor, while intoxicated, by a liquor licensee. After noting that the statutory provision provided criminal penalties for its violation, we declined to authorize an implicit, statutory right of action based on the same violation, holding instead that violation of the statute was "evidence of negligence." *Id.; see also Elks Lodge v. Hanover Ins. Co.,* 110 N.H. 324, 326, 266 A.2d 846, 847 (1970) (The precursor to RSA 179:5 did not "impose civil liability, although a violation [of the statute was] evidence of negligence."). *But see Weldy v. Town of Kingston,* 128 N.H. 325, 331, 514 A.2d 1257, 1260 (1986) (finding that former RSA 180:2, now codified at RSA 179:2 (1994), imposes a statutory duty of care upon police officers to arrest teenagers discovered illegally transporting alcohol). The statute we considered in *Ramsey* and in *Elks Lodge,* RSA 175:6

(1990), was virtually identical to RSA 179:5. We see no reason to reach a different result today than we did in those cases. Accordingly, we hold that RSA 179:5 grants no civil right of action based on its violation.

## II. Common Law Negligence Cause of Action

Whether this court should recognize social host liability based upon common law negligence principles is an issue of first impression in New Hampshire. Most jurisdictions that have considered the issue of social host liability, whether to an injured intoxicated guest or an injured innocent third party, have decided the question in favor of the social host. 1 J. LEE & B. LINDAHL, MODERN TORT LAW § 3.12 (rev. ed. 1990).

The prevailing rule at common law was "that there [could] be no cause of action . . . against one furnishing liquor in favor of those injured by the intoxication of the person so furnished." *Elks Lodge,* 110 N.H. at 325, 266 A.2d at 847. The reason for this rule was "that the proximate cause of the intoxication was not the furnishing of the liquor, but the consumption of it by the . . . donee. The rule was based on the obvious fact that one could not become intoxicated by reason of liquor furnished him if he did not drink it." *Ely v. Murphy,* 540 A.2d 54, 56-57 (Conn. 1988) (quotation omitted); *see also Elks Lodge,* 110 N.H. at 326, 266 A.2d at 847 (noting that another reason supporting the common law rule is that the consumption of alcohol is the proximate cause of the *injury*). The act of drinking the liquor was thus viewed as an intervening cause that shielded a defendant from liability. *See* RESTATEMENT (SECOND) OF TORTS §§ 440, 441 (1964).

In response to this apparent absence of a remedy for injury caused by intoxication, in 1870 the New Hampshire General Court enacted a statute "relating to the sale of spirituous liquors." Laws 1870, ch. 3. This civil damage statute imposed upon providers of alcohol strict liability for injuries caused by persons in "a state of intoxication." *Id; see Elks Lodge,* 110 N.H. at 326, 266 A.2d. at 847; *Hoyt v. Tilton,* 81 N.H. 477, 480, 128 A. 688, 689 (1925).

In response to the repeal of Prohibition, *see* U.S. CONST. amend. XXI, § 1, New Hampshire repealed the civil damage law in 1934 and replaced it with a comprehensive web of regulations covering every aspect of the traffic and consumption of alcohol. Laws 1934, ch. 3. The prohibition against giving or selling alcohol to minors or intoxicated people found in the 1934 enactment has remained virtually unchanged. *Compare id.* § 31 *with* RSA 179:5 (1994).

In *Ramsey,* 106 N.H. at 376, 211 A.2d at 901, we held that the 1934 repeal of our civil damage statute did not abrogate common law

negligence principles. After stating that violation of the precursor to RSA 179:5 was evidence of negligence, we held that a plaintiff could maintain a common law negligence action for injuries received as a result of being served additional liquor, while intoxicated, by a liquor licensee. *Id.; see also Burns v. Bradley*, 120 N.H. 542, 544, 419 A.2d 1069, 1071 (1980). We have recognized a common law action against dram shops for both the injured intoxicated patron, *see Ramsey*, 106 N.H. at 376, 211 A.2d at 901, and those third parties who have been injured by the intoxicated patron, *see Elks Lodge*, 110 N.H. at 326, 266 A.2d at 847.

We have never addressed whether a plaintiff may proceed against a social host, rather than a person or organization licensed under the New Hampshire statutes. In *Ramsey*, we approved of the reasoning of several cases from other jurisdictions, including *Rappaport v. Nichols*, 156 A.2d 1 (N.J. 1959), when we authorized a common law negligence action against licensees. *Ramsey*, 106 N.H. at 376, 211 A.2d at 901. The *Rappaport* court made it clear that it considered important the distinction between "persons . . . engaged in the liquor business" and persons not so engaged. *Rappaport*, 156 A.2d at 10.

Since the repeal of Prohibition, "virtually every aspect of the manufacture, sale and distribution of alcoholic beverages has been regulated by the legislature." *Overbaugh v. McCutcheon*, 396 S.E.2d 153, 158 (W. Va. 1990). Social hosts and licensees alike are subject to criminal penalty for violation of New Hampshire's liquor control statutes, although our legislature has chosen to treat social hosts and licensees differently in the context of penalties for violation of the statutes: RSA 179:58 provides that a violation of chapter 179's provisions constitutes a felony if the actor is a licensee, but a misdemeanor if the actor is any other person.

When the legislature enacted comprehensive tort reform measures in 1986, it included RSA chapter 507-F, a dram shop act which preempted the common law right of action against licensees. Laws 1986, ch. 227; RSA 507-F:8 (Supp. 1994). No provision is made in the act for an action against a social host. *See* RSA 507-F:3 (Supp. 1994) (defining a "defendant" under the chapter as "any person licensed or required to be licensed" pursuant to RSA 178:1, I, and any employees of such person). On the other hand, because we had not recognized explicitly a common law right of action against a social host, there was no action to preempt. *Cf.* RSA 507-F:3,:8.

The rationale underlying the imposition of liability on a licensee differs from that underlying imposition of such liability upon a social host. Social hosts, unlike licensees, lack pecuniary motives in their

decisions to serve alcohol to guests. *See Harriman v. Smith*, 697 S.W.2d 219, 221 (Mo. Ct. App. 1985). In addition, commercial vendors generally can monitor more closely, and are better trained at monitoring, consumption by their patrons. *Overbaugh*, 396 S.E.2d at 158. Courts have justified the difference in treatment between licensees and social hosts in various ways, but the principle underlying each rejection of the doctrine rests on public policy. *See Manning v. Nobile*, 582 N.E.2d 942, 948-49 (Mass. 1991); Note, *Social Host Liability: Opening a Pandora's Box*, 61 IND. L.J. 85, 108-14 (1985).

Although we recognize the differences between liquor licensees and social hosts, we also see many similarities. The public policy supporting the common law and legislative imposition of liability upon licensees for injuries to and caused by intoxicated patrons includes a recognition of the contemporary tragedy of drunk driving. We note that "[j]udicial power to create a tort 'is to be exercised in light of relevant policy determinations made by the [legislative branch].'" *Makovi v. Sherman-Williams Co.*, 561 A.2d 179, 188 (Md. 1989) (quoting *Bush v. Lucas*, 462 U.S. 367, 373 (1983)). We agree with the legislature that the problem of drunk drivers on our highways is "deplorable." Laws 1981, 543:5 ("The general court declares that driving while intoxicated is a deplorable act which shows wanton disregard for the rights of others to safely use our highways."). Nothing inherent in the public policy of deterring drunk driving militates against holding social hosts to a standard similar to the one to which licensees are held. *See McGuiggan v. New England Tel. & Tel. Co.*, 496 N.E.2d 141, 144 (Mass. 1986) (noting that some courts consider the distinctions between licensees and social hosts not to preclude social host liability, but to bear upon whether particular conduct is negligent); *cf. Klingerman v. Sol Corp. of Maine*, 505 A.2d 474, 478 (Me. 1986) (refusing "to encumber the law of proximate causation with an artificial limitation that precludes jury consideration of the causal relationship between the sale of intoxicating beverages and consequent harm").

We hold that a plaintiff who is injured as a result of a social host's service of alcohol may maintain an action against that social host, so long as the plaintiff can allege that the service was reckless. A social host's service of alcohol would be reckless if the host "consciously disregard[ed] a substantial and unjustifiable risk" of a high degree of danger. BLACK'S LAW DICTIONARY 1270 (6th ed. 1990). The risk that the host disregards must be "of such a nature and degree that, considering the nature and purpose of the actor's

conduct and the circumstances known to [the actor], its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." *Id.; see also* W. KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 34, at 214 (5th ed. 1984) (describing reckless conduct as "highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent").

■ The traditional elements of a common law tort action shall apply to an action based on social host liability. Just as in any negligence action, the plaintiff must demonstrate the existence of a duty flowing from the defendant to the plaintiff and that the defendant's breach of that duty caused the injury for which the plaintiff seeks to recover. *E.g., Manchenton v. Auto Leasing Corp.*, 135 N.H. 298, 304, 605 A.2d 208, 213 (1992). The defendant's reckless conduct, once shown, must still be the cause of the injury to the plaintiff. *See White v. Schnoebelen*, 91 N.H. 273, 274, 18 A.2d 185, 186 (1941) (recognizing the distinction between foreseeable result and proximate cause).

Any action sounding in negligence or recklessness is governed by our comparative fault provisions. *See* RSA 507:7-d (Supp. 1994); *Ramsey*, 106 N.H. at 378, 211 A.2d at 902 (injured patron's contributory negligence was a defense to action against a licensee). As a result, an injured *guest* will be the least likely to obtain recovery in this sort of case. *See Ling v. Jan's Liquor*, 703 P.2d 731, 739 app. (Kan. 1985) (appendix describes each of the fifty state positions on licensee liability). This hearkens back to the common law rule—that it is the drinking, not the providing, of alcohol that causes harm—but its basis is still true today. We will not impute to a social host a greater understanding of the dangers inherent in operating a motor vehicle while intoxicated than that possessed by the average drinker. An injured, drunken guest must demonstrate a severe degree of recklessness to demonstrate that a defendant was more at fault than the plaintiff. *See* Laws 1981, 543:5 ("The general court declares that driving while intoxicated is a deplorable act which shows wanton disregard for the rights of others to safely use our highways."); *cf. State v. Wong*, 125 N.H. 610, 619, 486 A.2d 262, 268 (1984) (concluding that operating an automobile while in a state of intoxication is *per se* negligence).

Other courts have taken this application of comparative fault principles so far as to preclude an injured intoxicated guest from maintaining an action against the guest's host, reserving such actions to injured innocent third parties. *See, e.g., Sutter v.*

*Hutchings*, 327 S.E.2d 716, 721 (Ga. 1985). The Supreme Judicial Court of Massachusetts, for example, has noted that

> the lesser blameworthiness of the host dictates that we should impose liability on the host, if at all, only for injuries to innocent victims and not for injuries sustained by the drunken driver himself or herself. If the driver is seen as primarily responsible for the accident, it seems obvious that he or she should not be able to recover against the secondarily responsible host.

*Manning*, 582 N.E.2d at 949 (quotation omitted). The New Hampshire legislature implicitly acknowledged this issue when it enacted RSA chapter 507-F, which expressly preempted the common law right of action against licensees. RSA 507-F:8. To recover against a licensee under the chapter, an injured third party must demonstrate only negligence, while an injured patron must demonstrate recklessness. RSA 507-F:2, :4, :5 (Supp. 1994). The principles of comparative fault, when applied to either the injured third party or the comparatively negligent guest, will effect this same sort of distinction.

On the other hand, injured intoxicated minor guests may be more likely to recover than injured intoxicated adult guests. In the few jurisdictions that have adopted social host liability applicable to injured guests, the age of the injured guest has been an important consideration. *See Manning*, 582 N.E.2d at 947-48 & n.10 (noting distinct treatment of adult and minor guests); *Longstreth v. Gensel*, 377 N.W.2d 804, 809 (Mich. 1985) ("We believe that this distinction is crucial for the purposes of this appeal."); *Congini v. Portersville Valve Co.*, 470 A.2d 515, 517-18 (Pa. 1983) (allowing cause of action where injured guest was a minor, noting that no such cause of action is allowed where guest was an adult). The decision to deny the cause of action entirely to adults but to allow it to minors has drawn criticism, however: One justice has noted that "inapposite results arise solely from the fortuitous circumstance of the age of the tortfeasor, rather than the conduct of the social host." *Congini*, 470 A.2d at 521 (Zappala, J., dissenting).

We will not allow or disallow a cause of action based on social host liability solely because of the plaintiff's age. RSA chapter 507-F does not distinguish between minor and adult plaintiffs. The minority of a drinking guest is merely a factor to be considered by the finder of fact when it determines whether the social host's conduct was reckless. The fact that RSA 179:5 makes it a crime to serve alcohol to minors is relevant to this determination. *See Ramsey*, 106 N.H. at 376, 211 A.2d at 901.

■   The age and identity of the plaintiff in a social host liability action are but two of the factors to be considered by the trier of fact in determining whether a host's conduct was reckless. The specific practices outlined in RSA 507-F:5 as evidence of reckless conduct are also relevant. *See* RSA 507-F:5, III (a)-(d) (practices described include encouragement to drink substantial quantities of alcohol and active assistance of an intoxicated patron into a motor vehicle).

We affirm the trial court's decision insofar as it denied Hickingbotham's claim sounding purely in negligence. We grant Hickingbotham leave to amend his writ to include allegations that the defendant's conduct was reckless, and remand this matter to the superior court for proceedings consistent with this opinion.

> *Affirmed in part; reversed*
> in part; remanded.

HORTON, J., with whom THAYER, J., joined, dissented; the others concurred.

HORTON, J., dissenting: I start from a different understanding of the current state of our law. The majority, citing *Elks Lodge v. Hanover Insurance Co.*, 110 N.H. 324, 325, 266 A.2d 846, 847 (1970), declares that the prevailing rule at common law was to deny a cause of action against those furnishing liquor by those injured by virtue of its consumption. Whether or not this prevailing rule did exist, *Elks Lodge* merely states that such a position had been taken frequently by the courts and proceeds to emphasize that this was not the law in New Hampshire. *Elks Lodge* states that the law in this jurisdiction is governed by *Ramsey v. Anctil*, 106 N.H. 375, 211 A.2d 900 (1965), which held that such a cause of action exists based on "common law principles of negligence." *Elks Lodge*, 110 N.H. at 326, 266 A.2d at 847. Both *Ramsey* and *Elks Lodge* establish a general cause of action for the negligent provision of alcohol and, although both cases are licensee cases and confirm the liability against that class of defendants, neither case makes a distinction in the analysis that would imply a limitation to that class. I would say that we start from the posture of an established cause of action against the social host negligently providing alcohol.

The underlying basis for the cause of action in this case should be ordinary negligence. I perceive no reason to require any lesser standard of care before liability attaches. The legislature has seen fit to require a form of recklessness before liability attaches to liquor licensees. RSA 507-F:5, I (Supp. 1994) (providing definition of recklessness keyed to excessive risk). RSA chapter 507-F provides a system of liability and protections uniquely tailored to the

problems met by licensees in the practice of their trade. *See* RSA 507-F:4, IV (Supp. 1994) (off premises distribution to minors); RSA 507-F:4, V (Supp. 1994) (off premises distribution); RSA 507-F:4, VI (Supp. 1994) (off premises consumption); RSA 507-F:4, VII (Supp. 1994) (drug supplement); RSA 507-F:5, III (Supp. 1994) (statutory evidentiary elements for recklessness); RSA 507-F:6 (Supp. 1994) (defense of responsible business practices); RSA 507-F:7, I (Supp. 1994) (statutory privilege to refuse service). I do not infer a general policy to lessen the common law standard of care. *See Wisniewski v. Gemmill*, 123 N.H. 701, 705-06, 465 A.2d 875, 877-78 (1983). Should the legislature find that such a lessening is appropriate for defendant classes other than licensees, I would leave to it the terms, subject to our constitutional scrutiny, by which the liability and protections should be structured.

In acknowledging the existence of a common law negligence action against a social host for injuries that result from serving alcohol to a guest who becomes intoxicated, I would note that the traditional elements of a common law negligence action apply. "The elements of negligence are a breach of a duty of care by the defendant, which proximately causes the plaintiff's injury." *Weldy v. Town of Kingstown*, 128 N.H. 325, 330, 514 A.2d 1257, 1260 (1986). The plaintiff must prove both that the defendant acted negligently and that the defendant's negligence caused or contributed to the plaintiff's injuries. *Murray v. Boston & Maine R. R.*, 107 N.H. 367, 374, 224 A.2d 66, 72 (1966).

Even if the defendant breached a duty of care, the plaintiff can not prevail unless the breach was a proximate cause of the plaintiff's injuries. *Lefavor v. Ford*, 135 N.H. 311, 313, 604 A.2d 570, 572 (1992). On remand in this case "a relevant consideration [in determining proximate cause] will be whether the social host knew or reasonably should have known that the intoxicated guest might presently operate a motor vehicle" and whether the defendant knew or should have known that the guest was intoxicated. *McGuiggan v. New England Tel. & Tel. Co.*, 496 N.E.2d 141, 146 (Mass. 1986).

Any cause of action based on social host liability should be governed by the rules of comparative fault. RSA 507:7-d (Supp. 1994); *Batten By Batten v. Bobo*, 528 A.2d 572, 575 (N.J. Super. Ct. Law Div. 1986). In *Ramsey*, we specifically stated that an imbibing plaintiff's contributory negligence was a defense to an action by the imbibing plaintiff. *Ramsey*, 106 N.H. at 378, 211 A.2d at 902. Subsequently, the legislature abolished the absolute defense of contributory negligence and replaced it with comparative fault, whereby the plaintiff's contributory fault bars recovery if it was

38

greater than the fault of the defendant. RSA 507:7-d. That comparative fault may have the practical effect of barring most claims based on social host liability would not change my analysis. *See* Nyquist, *"Dram Shop" Cases Before and After the Tort Reform Act,* 6 N.H. TRIAL BAR NEWS 54, 55 (Winter 1986).

We should hold that under the facts of this case as alleged by the plaintiff, when a social host knows or should know that a guest is becoming intoxicated and knows or should know that the guest is likely to drive, it is a breach of the duty of care to provide the guest with alcohol. *See Elks Lodge,* 110 N.H. at 326, 266 A.2d at 847; *Ramsey,* 106 N.H. at 376, 211 A.2d at 901.

I would follow the mandate of the majority and remand this case, but such remand should be governed by the principles set forth above.

THAYER, J., joins in the dissent.