Rockingham
No. 94-372

STILLWATER CONDOMINIUM ASSOCIATION *& a.*

v.

TOWN OF SALEM

December 6, 1995

*Anne R. Clarke,* of Portsmouth, and *Wadleigh, Starr, Peters, Dunn & Chiesa,* of Manchester (*Robert E. Murphy, Jr. & a.* on the brief, and *Mr. Murphy* orally), for the plaintiffs.

*Soule, Leslie, Zelin, Sayward & Loughman,* of Salem (*Barbara F. Loughman* and *Diane M. Gorrow* on the brief, and *Ms. Gorrow* orally), for the defendant.

BATCHELDER, J. The plaintiffs, the Stillwater Condominium Association (association) and the individual unit owners, appeal an order of the Superior Court (*Coffey,* J.) dismissing the plaintiffs' action for damages. The plaintiffs argue that the trial court erred in ruling that the defendant, the Town of Salem (town), did not have a statutory or common law duty to protect the plaintiffs from the cost of installing a municipal water line to their homes. We affirm.

Stillwater Manor is a six-unit residential condominium. The developer, Robert C. Asadoorian, created the condominium after subdividing a larger parcel into two lots. During hearings before the Town of Salem Planning Board, Asadoorian told the board that

Stillwater Manor would be connected to a municipal water extension through the town of Methuen, Massachusetts. The planning board approved the subdivision plan in April 1988, subject to approval from the New Hampshire Water Supply and Pollution Control Division (WSPCD).

On May 26, 1988, the WSPCD approved the subdivision on the condition that both lots would be serviced by municipal water. Copies of the WSPCD approval were then sent to the planning board. On June 15, 1988, the final subdivision plat, approved by the planning board, was recorded in the Rockingham County Registry of Deeds. On or about June 29, 1988, the Salem Planning Director (director) issued Asadoorian a certificate of occupancy for the six units comprising the Stillwater Manor Condominium.

Asadoorian never constructed a municipal water line to the condominium. Nonetheless, in 1988 and 1989, he conveyed five of the six units, and the construction lender, Bank of New England, later sold the sixth unit at a foreclosure sale. On December 14, 1990, the director sent a letter to the association notifying the unit owners that the developer had failed to construct the municipal water line. The director suggested that the association and the two adjacent lot owners divide the cost of the water line extension. The plaintiffs subsequently filed suit against both the developer and the town; they also installed the required water line.

In their action against the town, the plaintiffs alleged that the town negligently breached a duty of care to the plaintiffs by: (1) failing to comply with the Salem subdivision regulations in effect at the time, which mandated that the defendants require the developer either to complete improvements or to post adequate security to cover the cost of improvement; (2) approving a subdivision plan that did not conform to the subdivision regulations; and (3) issuing a certificate of occupancy in violation of the regulations. The trial court, relying upon our decision in *Island Shores Estates Condominium Association v. City of Concord*, 136 N.H. 300, 615 A.2d 629 (1992), concluded that the town owed the plaintiffs neither a statutory nor a common law duty and, consequently, dismissed the plaintiffs' action. This appeal followed.

When considering an appeal of a motion to dismiss, we determine whether the facts alleged in the plaintiff's writ are sufficient to constitute a cause of action. *See Jay Edwards, Inc. v. Baker*, 130 N.H. 41, 44, 534 A.2d 706, 708 (1987). In so doing, "we accept the factual allegations of the challenged pleading as true, and we take all reasonable inferences therefrom in favor of the non-moving party." *Shafmaster v. Shafmaster*, 138 N.H. 460, 467, 642 A.2d 1361, 1367 (1994).

We first inquire whether the plaintiffs could assert an action at common law. "If no common law duty exists, the plaintiff cannot maintain a negligence action, even though the defendant has violated a statutory duty." *Marquay v. Eno*, 139 N.H. 708, 714, 662 A.2d 272, 277 (1995). If we find that a common law duty does exist, and "there is an applicable statute, the defendant . . . will be held to the statutory standard of conduct if the plaintiff is in a class the legislature intended to protect, and the harm is of a type the legislature intended to prevent." *Id.; see also Island Shores Estates*, 136 N.H. at 307, 615 A.2d at 633.

■ The plaintiffs maintain that once the town imposed the requirement of a municipal water line as a condition of subdivision approval, it had a duty to ensure that the condition was satisfied. We disagree. In considering whether a duty exists, we have said that "[t]he term 'duty' serves to focus attention on the policy issues determining the scope of the relationship between the parties." *Doucette v. Town of Bristol*, 138 N.H. 205, 210, 635 A.2d 1387, 1391 (1993) (quotation omitted). "As to the duty owed by a municipality, the concept of duty is a legal one, and asks whether the plaintiff's interests are entitled to legal protection against the defendant's conduct." *Id.* (quotation omitted).

The plaintiffs essentially allege that the town owed them a duty because they justifiably relied upon approval of the subdivision. In *Island Shores Estates*, we described a similar claim as one for negligent misrepresentation. 136 N.H. at 305, 615 A.2d at 632. For a misrepresentation to be actionable, a special relationship must exist between "[a] representor and the person relying on the misrepresentation." *Id.* at 306, 615 A.2d at 632. A special relationship exists, for instance, between contracting parties and may extend to third party beneficiaries of a contract. *See id.* at 306, 615 A.2d at 632-33. Here, the plaintiffs do not allege that they were owed any contractual duty, and it appears from the record that no special relationship existed between the parties.

■ The plaintiffs' assertion that the town assumed a duty to the plaintiffs by voluntarily regulating subdivisions is equally unavailing. A municipality does not assume a duty merely by virtue of having enacted regulations. To conclude otherwise would undermine the countervailing interest in protecting municipalities from exposure to unlimited liability. We have recognized that this consideration "must be a factor in every negligence analysis," *Island Shores Estates*, 136 N.H. at 306, 615 A.2d at 633, and that municipalities "have not been, and are not now, guarantors of public peace, safety and welfare," *Doucette*, 138 N.H. at 210, 635 A.2d at 1390. The

plaintiffs have presented us with no reason, on balance, to deviate from these principles in this instance.

Having concluded that the town owed the plaintiffs no common law duty, we construe the plaintiffs' argument as calling upon the court to, in effect, "recognize a new tort." *Marquay*, 139 N.H. at 715, 662 A.2d at 277 (quotation omitted). "In such a case, it must still be determined whether the plaintiff is a member of the class protected by the statute and whether the harm inflicted is the type intended to be protected against." *Id.* (quotation omitted). If the plaintiff satisfies these criteria, we then analyze the statute "to determine whether there exists any explicit or implicit intent that a violation . . . should give rise to a tort cause of action." *Id.* at 715, 662 A.2d at 277-78 (quotation omitted).

The plaintiffs argue that their financial injury is of the type the subdivision regulations were intended to prevent because the town enacted the regulations pursuant to RSA 674:36 (1986 & Supp. 1994). Under RSA 674:36, subdivision regulations may "[p]rovide against such scattered or premature subdivision of land as would involve danger or injury to health, safety, or prosperity by reason of the lack of water supply," RSA 674:36, II(a) (1986), and may include any provision tending "to create conditions favorable to health, safety, convenience, or prosperity," RSA 674:36, II(j) (1986). "Prosperity," the plaintiffs contend, means "financial injury" such as they suffered here. Again, we disagree.

■■■ RSA 674:36, II(a) serves "to ensure that the town, through its planning board, retains control over *its* expenditures on the development, improvement, and maintenance of town services to new subdivisions." NEW HAMPSHIRE LAND USE LAW § 10-10, at 238 (W. Martin ed., 1993) (footnote omitted) (emphasis added). Bearing this purpose in mind, and ascribing to the statutory language its plain and ordinary meaning, *see Great Lakes Aircraft Co. v. City of Claremont*, 135 N.H. 270, 277, 608 A.2d 840, 845 (1992), we are persuaded that "prosperity" refers to a *community's* fiscal well-being, and not to an individual's financial interest, *cf. Britton v. Town of Chester*, 134 N.H. 434, 441, 595 A.2d 492, 496 (1991) (construing general welfare provision of zoning enabling statute as including welfare of the "community"). Accordingly, the plaintiffs' injury is not of a type the statute was intended to prevent, and the statutory inquiry is therefore at an end.

*Affirmed.*

BRODERICK, J., did not sit; BATCHELDER, J., retired, sat by special assignment under RSA 490:3; all who sat concurred.