Carroll
No. 98-624

WOLFEBORO NECK PROPERTY OWNERS ASSOCIATION & a.

v.

TOWN OF WOLFEBORO

June 1, 2001

*Boutin & Associates, P.L.L.C.*, of Londonderry (*Edmund J. Boutin* and *Elizabeth A. Dunn* on the brief, and *Mr. Boutin* orally), for the plaintiffs.

*Barto and Puffer, P.A.*, of Concord (*Mark H. Puffer* on the brief and orally), for the defendant.

BROCK, C.J. The plaintiffs, the Wolfeboro Neck Property Owners Association, an incorporated association of property owners in a Wolfeboro subdivision known as Embassy Estates, together with Bruce C. Beck, an individual property owner in that subdivision, appeal an order of the Superior Court (*Fauver*, J.) denying their petition to lay out two roads within the subdivision. We reverse and remand.

Wolfeboro's 1987 Subdivision Regulations and 1986 Revised Design and Construction Standards for Highways set forth the procedures necessary for road acceptance within subdivisions in the Town of Wolfeboro, the defendant. As a condition of subdivision approval, the developer must post a bond to cover all costs necessary to construct roads consistent with town standards. To assure compliance with these standards, the town inspects the roads throughout their construction.

In 1987, the Wolfeboro Planning Board (board) approved the construction of Embassy Estates. The developer, who is now bankrupt, posted a $361,240 bond to assure the proper construction of the roads. Thereafter, the plaintiffs purchased lots within the subdivision.

In 1988, the town's designated agent, the director of public works, certified to the board that based on his inspections, the subdivision roads were complete and complied with town requirements. As a result, the Wolfeboro Board of Selectmen (selectmen) released the construction bond.

In May 1995, after the development had reached the residential density required by the town's subdivision regulation for the layout of roads, the plaintiffs filed a petition for acceptance of the roads, pursuant to RSA 231:8 (1993). Upon inspection of the roads, however, the town determined they lacked sufficient pavement depth, crushed gravel and bankrun gravel to meet town require-

ments. The cost to fix the deficiencies to satisfy the town's specifications in place at the time of subdivision approval was estimated at approximately $295,000.

In October 1996, the plaintiffs amended their petition, requesting that the town pay all but $20,000-$30,000 of the costs to fix the roads. The town refused to lay out or accept the roads, and the plaintiffs appealed to the superior court. *See* RSA 231:34, :38 (1993).

The superior court record indicates that the subdivision roads also serve another Wolfeboro neighborhood and that tax revenues generated from the homes served by these roads is nearly $450,000 annually. Several repair estimates were presented to the board and the court including one of approximately $94,000 for "substantial repair" of the roads. The plaintiffs' surveyor testified that although the roads would not totally comply with the town's standards, adequate repairs could be done for much less than $295,000. At oral argument, the town conceded that although most roads that have been laid out since the adoption of the town's highway standards comply with them, the town currently maintains many roads that do not.

The trial court determined that the town released the bond, despite substandard road construction, because the town "either breached its duty to adequately perform the inspections required of the Town by the regulations," or it properly conducted the inspections and "found the roads to be conforming" with the town standards at that time. Nevertheless, weighing the overall public benefit of the roads against the burden imposed upon the town to maintain them in line with town standards, the court denied the plaintiffs' petition.

On appeal, the plaintiffs assert that the trial court erred by: (1) relying upon the town's burden to repair the roads when this burden resulted from the town's failure to properly inspect them; (2) failing to rule that the town breached a duty to subdivision residents to insure that the roads met town requirements; (3) construing *Island Shores Estates Condominium Assoc. v. City of Concord*, 136 N.H. 300 (1992), and *Stillwater Condominium Assoc. v. Town of Salem*, 140 N.H. 505 (1995), too broadly; (4) failing to grant relief based on municipal estoppel; and (5) failing to find the bad faith or arbitrariness necessary for mandamus. Because the first three issues are closely related, we will consider them together.

██ ██ Upon petition, a town will lay out roads when there is an "occasion" to do so. *See* RSA 231:8; *Rockhouse Mt. Property Owners*

*Assoc. v. Town of Conway*, 133 N.H. 130, 133 (1990) (*Rockhouse II*). "'Occasion' for the lay out of public roads exists if the public interest requires the town's acceptance of the roads. This determination involves balancing the public need for the roads against the burden the roads would impose upon the town." *Id.* at 134 (citation omitted). Factors to be considered in determining the public need for the roads are "'the public exigency and convenience' and the rights of affected landowners." *Jackson v. Ray*, 126 N.H. 759, 762 (1985) (quoting *Waisman v. Manchester*, 96 N.H. 50, 53 (1949)).

█ If a town refuses to lay out a road, the plaintiffs may petition the superior court to do so. *See* RSA 231:38. The superior court conducts a *de novo* hearing to make "an independent determination of the occasion, or appropriateness, of laying out a road as requested." *Rockhouse Mt. Property Owners Assoc. v. Town of Conway*, 127 N.H. 593, 599 (1986) (*Rockhouse I*); *see also Jackson*, 126 N.H. at 762; *Waisman*, 96 N.H. at 53. We will uphold the superior court's decision as to whether or not an occasion exists if it is supported by some evidence and is not based on fraud or gross mistake. *See Jackson*, 126 N.H. at 762. Clearly, this standard encompasses errors of law.

The plaintiffs contend that because the town improperly released the construction bond intended to assure that the roads would meet town standards, the court should have considered this fact when determining whether an "occasion" existed. We agree and conclude that the superior court erred as a matter of law.

The town argues that it owed no duty to the plaintiffs, relying upon *Stillwater*, 140 N.H. at 507 (where town issued certificates of occupancy for condominiums that did not meet town standards, no duty owed to condominium owners to insure that town standards had been satisfied), and *Island Shores Estates*, 136 N.H. at 304-08 (although city failed to detect structural flaws in condominiums and improperly issued certificates of occupancy, no duty arose to protect property interests of condominium owners). Although *Stillwater* and *Island Shores Estates* also involved faulty municipal inspections, they are distinguishable from the present case.

Unlike *Stillwater* and *Island Shores Estates*, this appeal involves a statutory analysis which requires an equitable balancing to determine whether an "occasion" exists to lay out a road. In that context, we need not find that the town owed a duty, the breach of which would be tortious, in order to hold that the town is not

entitled to enhance any "burden" it may have in laying out a road by any action it unreasonably took which resulted in self-created adverse consequences.

In the case before us, consistent with its subdivision regulations, the town inspected the roads at various stages of construction to determine whether they would meet the town's highway standards. Indeed, the town's subdivision regulations, in order to protect members of the public from substandard roads, required a bond that the town could not release unless the roads met the town's standards.

■ "A performance bond is intended to *guarantee* completion of the improvements it covers." *Board of Supervisors of Stafford County v. Safeco Insurance Company of America*, 310 S.E.2d 445, 448-49 (1983) (emphasis added). Thus, the town established not only the procedure, but also the means to insure that town standards would be met. As an obligee on the bond, the town's role was like that of a trustee "who was required, should the developer fail to make the secured improvements, to attempt to recover the funds from the bonding company and use them ultimately to complete improvements." *Cox v. Utah*, 716 P.2d 783, 785 (Utah 1986); *see also Pacific County v. Sherwood Pacific, Inc.*, 567 P.2d 642, 648 (Wash. App. 1977). We conclude that when undertaking the equitable balancing required to determine whether there is an "occasion" under RSA 231:8 for the laying out of public roads, the trial court in this case should not have considered any "burden" the town may have had in laying out the roads caused by its own unreasonable actions.

The trial court found that the town either performed its inspections negligently or properly inspected the roads. Since a finding that the town acted negligently would imply a finding that the town acted unreasonably, *see Caliri v. N.H. Dept. of Transportation*, 136 N.H. 606, 609 (1993), this issue should be resolved by the trial court upon remand in determining whether an "occasion" exists to lay out the roads. Any burden on the town that is found to be the result of its unreasonable actions in inspecting the roads and releasing the construction bond shall not be weighed in the "occasion" analysis. We note that our decision rests upon our analysis of the proper means of determining the existence of an "occasion" under RSA 231:8; nothing herein should be construed as an abandonment by this court of the public duty doctrine.

We conclude that the plaintiffs' remaining arguments are without merit and do not warrant further discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322 (1993).

*Reversed and remanded.*

BRODERICK, J., concurred; BATCHELDER and HORTON, JJ., retired, specially assigned under RSA 490:3, concurred.