Rockingham
No. 93-376

JOHN AND JUDY HEALY

v.

PETER TELGE & *a.*

February 8, 1995

*Craig, Wenners, Craig & Casinghino*, of Manchester (*James W. Craig* on the brief, and *Gemma M. Dreher* orally), for the plaintiffs.

*Peabody & Brown*, of Manchester (*Kevin M. Fitzgerald* on the brief and orally), for defendant Peter Telge.

*Keith Barton d/b/a Keith's Truck Service, pro se,* filed no brief.

*Ruddock & Innes, P.A.,* of Bedford, for defendants Laliberte Construction, Inc. and Laliberte Septic Service, filed no brief.

HORTON, J. The plaintiffs, John and Judy Healy, brought suit against the defendants for breach of express and implied warranties for the failure of their septic system. The Superior Court (*Coffey,* J.) found for all defendants. On appeal, the plaintiffs assert error in the trial court's findings: (1) that the seller, defendant Peter Telge, gave no express or implied warranties concerning the septic system or its repair; and (2) that defendants Keith's Truck Service, Laliberte Construction, and Laliberte Septic Service did not breach any express or implied warranties. We affirm in part, reverse in part, vacate in part, and remand.

The plaintiffs entered into a purchase and sale agreement with defendant Telge (seller) for the purchase of his house located in Auburn, contingent upon a satisfactory inspection. The inspection report stated that "the sewage disposal system can be expected to function unsatisfactorily, and is likely to create an unsanitary condition" and further noted saturation of the leaching area, "which indicates early sign of failure." At the time of inspection, the septic system served three houses, and until that time no one, including seller, purchaser, or inspector, was aware of this.

The seller hired his own inspector who confirmed that the septic system was in failure. The seller then hired defendant Laliberte Septic Service (Laliberte) to pump out the septic system and dispose of the waste. The seller asked Laliberte for a certification of the septic system as required by the plaintiffs' mortgage lender. Raymond Laliberte, owner of Laliberte Septic, refused to certify the system but stated that he would do so if the seller replaced it. Subsequently, the seller orally contracted with defendant Keith Barton d/b/a Keith's Truck Service (Barton) to replace the old septic system with a new one. Barton removed the old system and replaced it with one of the same size, height, and design. Barton did not secure a permit from the Town of Auburn to perform this work, as required by town ordinance. After Barton completed the work, Laliberte inspected the system and certified that "the system is in working condition and should be adequate for normal household use," but noted that "[d]ue to variables beyon[d] our control I cannot be held responsible for future failure."

This certificate was given to the plaintiffs' real estate agent who, in turn, reported to the plaintiffs that everything was ready for closing. Relying on their real estate agent's statements, the plaintiffs moved into the house and subsequently closed without any further inspection

of the septic system. Approximately three months after closing, the system was again in complete failure.

The plaintiffs brought suit against the defendants for breach of express and implied warranties. The trial court found for all defendants and the plaintiffs appeal. The plaintiffs first assert error in the trial court's finding that the seller gave no express or implied warranties as to the septic system. We disagree.

The seller gave no express warranties to the plaintiffs. As the trial court found, the plaintiffs relied on their realtor's statements that the septic system was adequately repaired, not on any statements made by the seller. When the plaintiffs decided to purchase a house, they engaged a realtor to help them. The realtor showed them the seller's property, which they were not able to enter at the time because the seller was not available. Nevertheless, the plaintiffs entered into a purchase and sale agreement contingent on a home inspection. The plaintiffs' realtor gave them a copy of the report indicating a septic problem. The plaintiffs' realtor told them that the seller would have to fix the septic system prior to closing, and later told them that the seller had received septic approval. The plaintiffs moved into the house before closing and did not experience any problems with the septic system. They never contacted the seller concerning the septic system prior to closing. After closing the plaintiffs asked the seller what they should do if there were any problems with the septic system, and the seller told them to call Barton. We hold that the seller made no express warranties as to the performance of the septic system.

 The seller did not breach any implied warranties. While New Hampshire does recognize the existence of an implied warranty of habitability and workmanlike quality in the sale of a house, *Norton v. Burleaud*, 115 N.H. 435, 436, 342 A.2d 629, 630 (1975), it is an obligation imposed on a builder or contractor rather than a mere seller. *See Lempke v. Degenais*, 130 N.H. 782, 784, 547 A.2d 290, 291 (1988); *Norton*, 115 N.H. at 436, 342 A.2d at 630. Because we choose not to impose this implied warranty upon a seller who is neither the builder nor contractor, we hold that the seller breached no implied warranty of habitability or workmanlike quality.

The plaintiffs next contend that the trial court erred in finding that Barton did not breach any express or implied warranties relating to the installation of the replacement septic system. Although there was conflicting evidence concerning whether Barton was hired to "fix" or "replace" the system, the trial court found that Barton was hired only to replace the system. The trial court's findings of fact are binding on us unless they are not supported by the evidence or are erroneous as a matter of law. *McCabe v. Arcidy*, 138 N.H. 20, 24, 635 A.2d 446, 449 (1993). We hold that the evidence, which included testimony of both the

seller and Barton that he was hired only to replace the system, was sufficient to support the trial court's finding.

Any implied warranty the law imposes on Barton must be assessed in light of what he was contracted to do. Since Barton was hired merely to replace the system with an identical system, he impliedly warranted that he would use the "customary standard of skill and care" only in installing an identical system, and made no implied warranties as to the efficacy of the design. Extending an implied warranty beyond Barton's scope of employment to the design and efficacy of the system would be unjust. *See Prestige Development Group v. Russell*, 612 So. 2d 691, 692 (Fla. App. 1993) (contract to install roof according to manufacturer's instruction did not warrant that roof would not leak).

The record contains no evidence that Barton breached any implied warranty in the installation of an identical septic system, with the possible exception of his failure to comply with the Auburn town ordinance. The plaintiffs argue that Barton's failure to obtain a permit from the town prior to the installation of the system constitutes a breach of the implied warranty. The ordinance provides:

> No sewage disposal system shall be constructed, altered or replaced without a building permit from the Auburn Building Inspector. The application for a permit shall be accompanied by a design sketch of the proposed system and its location in relation to nearby dwellings, wells and other sources of water. The permit shall not be issued until the system has been approved by the New Hampshire Water Supply and Pollution Control Commission.

TOWN OF AUBURN ZONING ORDINANCE § 3.04 (2) (1986).

■ A causal violation of an ordinance, like a causal violation of a statute, constitutes legal fault, *see LeFavor v. Ford*, 135 N.H. 311, 314, 604 A.2d 570, 572 (1992), and may be used as evidence to prove breach of implied warranty. *Mease v. Fox*, 200 N.W.2d 791, 796 (Iowa 1972). A violation of the ordinance has evidentiary value only when the plaintiffs are within the class of persons intended to be protected by the ordinance and the harm suffered is of the kind the ordinance was intended to prevent. *See Island Shores Estates Condo. Assoc. v. City of Concord*, 136 N.H. 300, 307, 615 A.2d 629, 633 (1992); W. KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 36, at 224–25 (5th ed. 1984).

■ The ordinance is designed to prevent the type of harm suffered by the plaintiffs. The ordinance specifically requires the applicant to include a sketch of nearby water sources. There was testimony at trial that the failure of this septic system was due to the fact that it was

placed in the water table and that an inspection of the nearby water sources would have revealed this problem. By requiring the applicant to list nearby water sources, the ordinance sought to protect against the very harm alleged by the plaintiffs. The plaintiffs, as subsequent purchasers of the land, are also within the class of persons intended to be protected by the ordinance. Therefore, we reverse the trial court's finding that Barton did not breach any implied warranties and remand to the trial court for a determination of whether compliance with the ordinance would have solved the septic problem and what damages would have been avoided if Barton had complied.

There is no evidence in the record that Barton made any express warranties to the plaintiffs or to the seller, and we therefore hold that it was proper for the trial court to find that Barton did not breach any express warranties.

The plaintiffs also argue that Laliberte breached express and implied warranties in certifying the septic system replaced by Barton. After Barton replaced the septic system, Laliberte inspected the system and certified that "the system is in working condition and should be adequate for normal household use" but noted that "[d]ue to variables beyon[d] our control I cannot be held responsible for future failure." The plaintiffs concede that Laliberte Construction disclaimed any warranty against future failure, but contend that Laliberte did warrant the proper functioning of the system at the time of inspection. The plaintiffs mischaracterize the scope of the certification. The disclaimer is so gross that the certification can be at best a statement that the system is currently working. Since there is no evidence that the septic system was not working at the time Laliberte inspected the system, we hold that Laliberte did not breach any express warranty.

■ ■ The plaintiffs also contend that Laliberte breached an implied warranty of workmanlike quality by not adequately inspecting the septic system. The law imposes on the inspector an implied warranty to perform the inspection in a workmanlike manner. *Cf. Norton v. Burleaud*, 115 N.H. at 436, 342 A.2d at 630; *Krol v. Goldring*, 458 A.2d 15, 17 (Conn. Super. 1982) (implicit in contract that inspector would perform inspection in skillful, competent, and workmanlike manner). Whether the inspector performed that duty is a question of fact, *Krol*, 458 A.2d at 17, which must be assessed in light of what Laliberte was contracted to do. The record indicates that Laliberte knew that the seller was going to give the certification to the bank and to the plaintiffs. Laliberte made a visual inspection of the leach field to determine that the system had been replaced and issued the certification because the system had been replaced. We vacate and remand for a determination of the standard of workmanlike quality in the inspection of septic systems at the time of Laliberte's inspection,

whether Laliberte breached the implied warranty of workmanlike quality in light of that standard, and whether the breach, if any, was the cause of any damages suffered by the plaintiffs.

We have considered the plaintiffs' other arguments and conclude that they are without merit. *See Vogel v. Vogel*, 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

*Affirmed in part; reversed in part;*
*vacated in part; and remanded.*

THAYER, J., did not sit; the others concurred.