Billings, A.J.

Facts

The following facts, except where noted, are not subject to genuine dispute. On May 15, 2000, the parties entered into a contract by which the defendant (“JR”) agreed to sell, and the plaintiffs to buy, land and a “spec” house constructed thereon by JR at 25 Squire Armour Road, Windham, New Hampshire. The plaintiffs and the defendant were both Massachusetts residents.
On or about July 31, 2000, the sale closed. JR executed on that date a “Builder’s Limited Warranty and Acknowledgment of Mutual Responsibility” (Warranty) which included the following:
1. CONCRETE FOUNDATION: The seller warrants that the concrete foundation and floor will be free from seeping and leakage for a period of one year from the closing of this transaction . . .
7. PLUMBING & SEWERAGE DISPOSAL SYSTEMS: The operation of plumbing and sewerage disposal systems is warranted for a period of one year from the date of closing of this transaction, except if in course of correcting a stoppage, any foreign objects are found within the system, the buyer will pay the entire cost of correction . . .
Each of these warranties was subject to exceptions which JR does not — with the exception of the “foreign objects” language quoted above — contend are relevant.
Within the one-year warranty period, the Buckleys observed that there were cracks in the foundation that were permitting water to enter the basement, and (in the spring of 2001) that the septic system had apparently failed. They gave JR timely notice of both defects. Specifically, in written communications dated 12/19/00, 1/23/01, 5/3/01, 5/7/01, and 6/19/01, Mr. Buckley notified JR of the foundation cracks and leakage, and of the lack of success of repairs attempted by JR over the winter and spring. A more formal certified letter from Mr. Buckley dated June 1, 2001 notified JR that the Buckleys “intend to hold you responsible for both the failed septic system and the *20 three leaks in our basement until they are properly repaired.”
A demand by counsel under G.L.c. 93A, §9, asserting claims relating to the septic system but not the basement, followed on June 5, 2002. The defendant responded on July 3, 2002, denying liability and declining to make an offer of settlement.
Photographs, properly authenticated and submitted with the plaintiffs’ papers, document a leaky and water-damaged basement. JR’s papers are entirely silent on the subject. It therefore appears undisputed that there was a breach of paragraph 1 of the warranty.
The issue regarding the septic system is a bit more complicated. The Buckleys have submitted no fewer than three affidavits and a Field Inspection Report, representing the opinions of four different licensed septic system designers and inspectors (supplemented, as in the case of the wet basement, with photographs). Taken together, these paint a consistent and coherent picture of a system in failure, as evidenced by surface pooling of effluent (“breakout”); a full tank that would not empty into the outlet pipes feeding the leach field; saturated soils around the system; in the discouraging words of one affiant, an “entire system . . . submerged in effluent.”
Two of the four also opined as to the cause of the failure. Their opinions focus on the presence of low-grade, clay-like, code-noncompliant fill placed under, around, and on top of the system, creating a “bathtub effect,” and causing effluent to pool rather than leach into surrounding soils.
In response, JR has offered the affidavit of Kurt Meisner, a licensed septic system designer. The affidavit is brief. It states that Meisner inspected the system on JR’s behalf, and concludes:
The cause of the failure of the septic system is due to the water filtration systems installed by the plaintiff, which causes fine materials to be discharged into the leach field.
For the basis of this opinion, the affidavit references Meisner’s report. This is more detailed, but also a good deal more equivocal, than the affidavit. Meisner inspected the site on September 6, 2001. Portions of the leach field were saturated and had been for some time. “Although the septic system is only one year old,” the report stated, “the system shows signs of strain and saturation.” Grease drops and fines were present in the distribution box. The site’s topography sloped toward the field and showed signs of surface runoff.
Gn cause, the report made the following statements:
This saturation is possibly due to the effects [of] surface and rainwater running from the rooftop and driveway on the site directly against the South side of the leach field.
The fines that are in the distribution box are not likely to be present and the probable cause of these fines are from a water treatment system located in the house and directly discharged into the leach field, or well water directly discharged into the leach field with improper filtration. The builder has informed me that a system was added in this house after construction by the homeowner.[1] These water treatment systems collect foreign particles from the well as well as treating the water. When the system is directly discharged into a leach field these fine particles then deposit into the septic tank and possibly the distribution box and eventually the leach field. This may be a direct cause of the fine particles that are located in the distribution box. The maintenance and upkeep of a water system are extremely important to ensure proper filtration and a high efficiency use of the system. Therefore the water system appears to be the most likely cause of failure in this particular case.
As I understand there are no other signs of leach field failure other than the saturation at the Southwest end of the leach field and the above listed issues may be the generating cause of the groundwater saturation at that point.
(Emphasis supplied.) The report concludes by “sug-gestfing] that the well water be tested to determine the number of fine particles that may be passing through into the plumbing and therefore into the leach field.”[2]
Plaintiffs have moved to strike Meisner’s affidavit, and for summary judgment on each count of the Amended Complaint. These are: breach of contract (Count I), breach of express warranty (Count II), breach of implied warranty of habitability (Count III), negligence (Count IV), fraud (Count V), and violation of G.L.c. 93A, §9 (Count VI). They seek compensatory damages and, under Count VI, attorneys fees and multiple damages.
For the following reasons, the plaintiffs’ motion to strike the Meisner affidavit is granted, and their motion for summary judgment is granted as to liability on Counts I, II, III (in part), and VI (in part), but denied as to Counts IV and V. Further proceedings are to be in accordance with the Order at the end of this Memorandum.

Discussion

A. Motion to Strike Meisner Affidavit
“Even in the absence of a motion to strike, a judge may disregard material in an affidavit which would not be admissible in evidence.” Commonwealth v. Amcan Enterprises, Inc., 47 Mass.App.Ct. 330, 337 (1999). This rule is as applicable to experts as to other witnesses. Id.; Baptiste v. Sheriff of Bristol County, 35 Mass.App.Ct. 119, 126 (1993). In other words, while Rule 56 (particularly subsection (e)) permits testimony by affidavit in place of live testimony, it does not otherwise dispense with the rules of evidence. Those include the oft-quoted, and fundamental, principle that “[a] mere guess or conjecture by an expert witness in the form of a conclusion from basic facts that do *21 not tend toward that conclusion any more than toward a contrary one has no evidential value.” Kennedy v. U-Haul Co., 360 Mass. 71, 73-74 (1971).
Meisner’s affidavit drew a conclusion which, if supported by facts admissible in evidence, would itself be admissible, and would create a genuine (though immaterial, see below) issue as to the cause of the septic system’s failure. The affidavit itself, however, sets forth no such facts, referring instead to Meisner’s report. The report, in contrast to the affidavit, is highly equivocal: saturation of the leaching field “is possibly due to” groundwater runoff from elsewhere on the site; the water filtration system “may be the cause” of fines found in the tank; taken together, these factors may be the generating cause of the saturated field. The one statement having at least the veneer of an opinion as to the cause of failure — that “the water system appears to be the most likely cause of failure in this particular case” — merely proceeds from the observation of fines and the opinion that the water system “may be” their source. Meisner does not evidence any knowledge of the type of system in place, how it worked, whether it had been properly maintained, or how it might possibly (let alone probably) have inserted “foreign objects” into the septic system, except to say that the fines may have originated in “well water directly discharged into the leach field with improper filtration.”
Even were one to read greater certitude into Meisner’s report than its language invites, moreover, it would not create a genuine issue of material fact. All agree the septic system failed within one year after closing. The express language of the warranty excuses JR if a stoppage is caused by “foreign objects” in the system. Meisner’s theory appears to be that what he calls “foreign particles,” originating in the Buckleys’ well, may have found their way into the septic system, perhaps due to inadequate “maintenance and upkeep” of the filtration system, which thereby allowed them to pass.
Calling sediments in well water “foreign,” however, does not make them so. The warranty does not expressly define what sort of objects are “foreign,”[3] but according to ordinary English usage, it must mean the sorts of objects that sometimes find their way into household plumbing systems through inadvertence or misuse — toothbrushes, diapers, the occasional child’s toy or household article, and so forth. It cannot refer to sediments originating in the well that the Buckleys purchased with the house, even if a filtration system they added later failed, for whatever reason, to remove them. Even if the possibilities Meisner identifies were probabilities, in other words, the warranty would still have been breached.
The same observation might be made of Meisner’s alternative theoiy: that runoff from the rest of the site was to blame. The Buckleys purchased the house with a well installed and with site grading completed. Even if the Meisner affidavit succeeded in placing the blame for the septic system on one or both of these causes, neither implicates a “foreign object,” or would otherwise excuse JR’s performance under the warranty.
The Meisner affidavit is thus incompetent; it does not create a genuine issue of fact; and the Buckleys’ motion to strike it is allowed. Even if the affidavit and report were accepted in toto, moreover, the factual issue thus created would not be a material one, as well sediments do not constitute “foreign objects” under the warranty.
B. Motion for Summary Judgment
1. Breach of Contract (Count I) and Express Warranty (Count II)
An express warranty promises that a specific result will be achieved. Coca-Cola Bottling Co. of Cape Cod v. Weston & Sampson Eng’rs, Inc., 45 Mass.App.Ct. 120, 128 (1998).[4] Under an express warranty, the standard of performance is set by a defendant’s statements, rather than imposed by law. Anthony’s Pier Four, Inc. v. Crandall Dry Dock Eng’rs, Inc., 396 Mass. 818, 822 (1986).
In this case, the defendant’s promises were set forth in the Warranty, which promised that “the concrete foundation and floor will be free from seeping and leakage,” and warranted the “operation of plumbing and sewerage disposal systems,” for a period of one year. It is undisputed that within the one-year warranty period, the foundation developed cracks which permitted water to leak into the basement, and the septic system failed. There is no evidence that the septic system failure was due to a “foreign object,” and no competent evidence implicating the water treatment system (even assuming that this would bring the “foreign object” defense into play), or controverting the plaintiffs’ evidence that the failure was caused by the use of substandard fill. The plaintiffs therefore are entitled to partial summary judgment as to liability (see below) on Counts I and II.
2. Breach of Implied Warranty of Habitability (Count III)
Both Massachusetts and New Hampshire law recognize a cause of action against a builder for breach of an implied warranty of habitability. See Albrecht v. Clifford, 436 Mass. 706 (2002); Healy v. Telge, 139 N.H. 407 (1995); Norton v. Burleaud, 115 N.H. 435, 342 A.2d 629 (1975). Under New Hampshire law, “(t]he implied warranty was that the house including the drainage and septic tank systems would be constructed in a workmanlike manner and in accordance with accepted standards.” Norton. Massachusetts law is similar. Albrecht 436 Mass. at 712.
The plaintiffs’ submissions make such a showing as to the septic system: competent evidentiary materials establish that the system was constructed using fill that did not comply with applicable New Hampshire regulations, and that this was the cause of the failure.[5] With respect to the foundation, however, there is no *22 showing as to why the basement leaks — whether it was due to defective design, improper construction, substandard materials, bad luck, or something else. This was not required on the express warranty claim, but its lack stands in the way of summary judgment on the claim for implied warranty of habitability. Thus, partial summary judgment is to enter for the plaintiffs on Count III, as to liability and as to the septic system only.
3.Negligence (Count IV)
Summary judgment on the merits is rare in negligence cases, see Kelly v. Brigham & Women’s Hospital, 51 Mass.App.Ct. 297, 300-01 (2001); even rarer when the party seeking it has the burden of proof; and rarer still in the sort of case in which the standard of care would normally be established by expert testimony.
Here, there is evidence of negligence by someone. The Beland affidavit opines, with a factual basis that is both disclosed in the affidavit and sufficient, “that the septic system at the property failed solely due to the use of inadequate, improper and illegal fill, trapping water in the system, and thereby causing it to fail.”
“[A] plaintiffs expert need not state his opinion in formulaic terms,” and a direct statement of the standard of care is not needed if “(t]he wrongs to which the language of the expert opinion... speaks implicitly show how the defendant committed a breach of the standard of care . . .”
Lucas v. Collins, 51 Mass.App.Ct. 30, 33 (2001). The Beland affidavit — specifically, the use of the terms “inadequate, improper, and illegal” — is probably an adequate paraphrase for saying that someone “failed to exercise the degree of care employed by the average qualified homebuilder or septic installer.”
The problem, however, is that JR did not design or construct the septic system; this was done by subcontractors (third-party defendant Edward N. Hebert Assoc., Inc. and George E. Merrill & Son, Inc., respectively). Because the uncontroverted evidence does not establish that JR exercised such control over either the design or the construction of the septic system, JR’s liability for negligence has not been established. See St. Germaine v. Pendergast, 411 Mass. 615, 622-23 (1992) (employer of independent contractor not liable for harm caused to another by independent contractor’s negligence, unless employer retained some control over manner in which work was done); Corsetti v. Stone Co., 396 Mass. 1, 9-11 (1985).
With respect to the basement, the evidence is simply that it cracked and leaked; there is no evidence establishing that this was due to a lack of due care on JR’s part. Summary judgment is therefore denied on Count IV.
4.Fraud (Count V)
Plaintiffs’ summary judgment materials do not identify any misrepresentation of fact by JR, made with knowledge of its falsity or with reckless disregard for its truth, on which the plaintiffs relied to their detriment. Accordingly, they are not entitled to summary judgment on Count V.
5.Chapter 93A (Count VI)
Chapter 93A prohibits unfair and deceptive acts or practices in trade or commerce. A breach of warranty is a violation of Chapter 93A. See Maillet v. ATF-Davidson Co., 407 Mass. 185, 193 (1990); 940 C.M.R. §3.08(2).
Unlike section 11, which limits actions thereunder to those arising from violations that “occurred primarily and substantially within the commonwealth,” section 9 does not impose any express territorial limit on the conduct within the statute’s reach. Section 1(b), however, defines “trade” and “commerce” broadly, and states that the terms “shall include any trade or commerce directly or indirectly affecting the people of this commonwealth.”
The parties agree (Statement of Undisputed Facts, ¶3 and response thereto) that at the time JR provided the warranty to the Buckleys, both parties were Massachusetts residents. Nothing in Chapter 93A appears to require that the defendant’s conduct, or the property covered by a warranty, be located in Massachusetts for the statute to apply. By establishing a breach of warranty, made while they were residents of Massachusetts, the Buckleys have established a violation of Chapter 93A.
The Buckleys’ June 5, 2001 demand letter,[6] however, mentioned only the septic system, not the foundation cracks or the wet basement. The Buckleys are therefore entitled to Chapter 93A relief as to the septic system only. See Clegg v. Butler, 424 Mass. 413, 423 (1997) (“Chapter 93A requires claimants to set out specifically any activities in their demand letter as to which they seek relief . . . Separate relief on actions not so mentioned is foreclosed as a matter of law”). Partial summary judgment will therefore enter on Count VI, as to liability and as to the septic system only.
6.Issues Relating to Damages
The plaintiffs have included, in the affidavit of Mr. Buckley, a fairly summary account of their claimed damages. In addition to out-of-pocket amounts (none of which are documented in this record), claims aire made for such unliquidated items as the estimated value of Mr. Buckley’s time, the value of the impairment to the property’s appearance and the useability of the basement area, and attorneys fees. The matter therefore needs to be scheduled for an assessment of damages, which shall include a hearing on attorneys fees recoverable under Count VI.
Additionally, if the Buckleys intend to proceed with their claim under Count VI for multiple damages, the parties should be prepared at the assessment hearing to submit whatever evidence may bear on the issues *23 of (a) whether the Buckleys are entitled to multiple damages,[7] and if so (b) what portion of the damages should be multiplied, and (c) what the multiplier should be.

ORDER

For the foregoing reasons, the plaintiffs’ motion to strike the Meisner affidavit is ALLOWED, and their motion for summary judgment is ALLOWED IN PART. Summary judgment is to enter for the plaintiffs as to liability only, and only as to Counts I (breach of contract); II (breach of express warranty); III (breach of implied warranty of habitability, as to septic system only); and Count VI (Chapter 93A, as to septic system only).
The Court will schedule the matter for an assessment of damages. Counsel should advise the clerk for the session of the issues to be tried (particularly, multiple damages), whether the proceeding will be to ajury or jury-waived, and of their best estimate of time required.

 It is undisputed that the Buckleys added a water filtration system in or about December 2001.

 The Buckleys have responded with an affidavit of their own from Charles Samardelis, a certified water specialist employed by the installer of the Buckleys’ filtration system. Following a description of the workings of the system (including the fact that the system’s only additive to the water is sodium chloride, or table salt), Samardelis states that the installer is not aware of any septic system failures caused by water treatment system it has installed, whether this or any other brand.

 The Merriam-Webster Dictionary includes, among the definitions of “foreign”: “of relating to, or proceeding from some other person or material thing than the one under consideration,” synonymous with “extrinsic.”

 Both parties appear to assume, without actually arguing the point, that Massachusetts law applies. Except in the case of the claim under Chapter 93A, it does not appear that any difference between the law of New Hampshire and that of Massachusetts would affect the outcome of this case.

 Specifically, the Beland affidavit cites New Hampshire Code of Administrative Rules ENV-WS 1014.11(c), requiring that “backfill material shall be clean permeable fill,” and opines that the fill Beland found did not comply. The Baas site inspection report is to like effect, minus the regulatory reference.

 None of the earlier communications from Mr. Buckley— which did complain of the foundation cracks — expressly mentioned Chapter 93A, the Buckleys’ rights as consumers, unfair or deceptive practices, the requirement of a tender of settlement within 30 days, or the possibility of an award of attorneys fees or of multiple damages. They were not, therefore, demands of the sort required by c. 93A, §9. See Cassano v. Gogos, 20 Mass.App.Ct. 348, 350-51 (1985).

 As noted above, the Buckleys’ counsel sent a demand letter on June 5, 2002, which complained of a breach of warranty as to the septic system and asserted rights under Chapter 93A. The response from JR’s counsel, dated July 3, 2002, made no offer of settlement, referring instead to Meisner’s report (but not, evidently, enclosing a copy). No reference appears in either the demand letter or the response to the wet basement, although this issue was raised earlier in communications from Mr. Buckley to JR, and there appear to have been some efforts (the details of which are unclear) by JR to remediate the problem. On this record, I cannot say the Buckleys have conclusively established either a willful or knowing violation of c. 93A §2, or a failure to make a reasonable tender of settlement, in bad faith with knowledge or reason to know that the act or practice complained of violated that section. See §9(3).